This is case 20-6194 United States of America v. Lexy Lionel Herrera-Pagoda And for Mr. Lexy Herrera-Pagoda, Ms. Gerges, if I pronounced your name correctly, if I haven't I apologize, but it's good to have you with us. Thank you so much. May it please the court. As your honor has indicated, my name is Nardine Gerges and I represent Mr. Herrera-Pagoda. In this matter, he moves for an order vacating the order of dismissal on his motion to vacate under section 28 United States Code section 2255. And remanding it back to the district court to vacate the underlying conviction or to remand it for further proceedings. Now, Mr. Herrera-Pagoda, and I think from this point forward, I'll just refer to him as Mr. Herrera. Constitutional right to effective assistance of counsel was denied when he was not given a proper opportunity to legally defend against the charge of illegal reentry. And that was in the initial case 715 CR 104. Had he been afforded such an opportunity in having effective assistance of counsel, he would not have pled guilty. Instead, he would have filed a motion to dismiss under section 1326 D of title eight United States Code. What's really telling here is that part of the record, we have the affidavit from his former counsel identifying the deficiency in his representation, which I believe is very strong evidence to support the conclusion that this was the rendering of ineffective assistance of counsel. But for his former attorney's misrepresentation of the law, Mr. Herrera would not have pled guilty given that he was not guilty of this charge. This further excuses the fact that he filed his 2255 outside of the one-year window. Additionally, he did in fact file his motion to vacate as soon as humanly possible and should also receive the benefit of equitable tolling. He had no idea that this was in fact a possibility because he was under the misapprehension that was initiated from the 2010 proceedings. The legal standard here that we need to kind of start off in discussing is illegal reentry and voluntary departure. Those are the two concepts that are really kind of interplaying at the forefront, and then I'll venture into further details. In illegal reentry section, that is explained in section 1326 A of the title A of the United States Code. It makes it a crime for a deported or removed alien to enter, attempt to enter or be found in the United States without the express consent of the attorney general. Because this prior deportation order or removal order is an element of this crime, a non-citizen who was granted voluntary departure rather than deported cannot be prosecuted for illegal reentry. Although the resulting effect is the same, that is with voluntary departure and in fact with the order of removal, it is distinguished for purposes associated with the underlying conviction of illegal reentry. Voluntary departure is simply sufficient in that sense. And it is considered a discretionary form of relief that allows certain individuals in removal proceedings, or as they commonly are referred to as aliens, either before the conclusion of removal proceedings or after being found, ordered deportable to leave the country willingly. So counsel, can I ask a question about that? So with respect to this question of ineffective assistance of counsel and the requirement that you show that the proceeding, a reasonable probability of a different outcome with respect to the proceeding, if we're dealing with something that is entirely discretionary on the part of the immigration judge, then how can you possibly show that there would have been a reasonable probability that your client would have been entitled to that relief? Due to the fact that on the record here, it is very clear that the immigration judge was actually proceeding in reviewing what could only be assumed to be the post-conviction voluntary departure. But we were at the time of the proceeding, we were pre-conclusion voluntary departure. And so it's very, and ironically, the post-conviction voluntary departure is a higher standard. It's a higher set of requirements than the pre-conclusion. And he was inclined, the immigration judge was actually inclined to provide Mr. Herrera with the ability to proceed with voluntary departure, although he doesn't specifically reference those words. But for the fact that he was under the misapprehension of the law regarding the fact that Mr. Herrera needed the monies to be able to effectuate that voluntary departure. So there is a very clear and not just a reasonable probability in this case on the record that identifies that he would have in fact received the benefit of pre-conclusion voluntary departure. And certainly had the immigration judge ventured into further discussion of post-conviction voluntary departure as well. Does that answer your question, Your Honor? Yes, it does. Thank you. So a related question is if we're dealing with something that is entirely discretionary, this question of voluntary departure, and there's a requirement in order for you to obtain relief in this case that you show a violation of someone's due process rights. How is something that is entirely discretionary ever capable of sort of mushrooming into a due process violation? Well, in the context of immigration perceived, the majority of the forms of relief available happen to be discretionary. So although they're mandated by law, and there's a specific duty identified by the Board of Immigration Appeals for the immigration judges to be able to explain those discretionary forms of relief. I think it's exceptionally important in this case in particular that when you have a pro se defendant, your reliance on that immigration judge is high, it's extreme. Because this is the means by which you receive a fair opportunity to be heard. Otherwise, if we don't permit these so-called discretionary forms of relief to be preceded upon or explained, immigration proceedings become a mere formality by and large. And so I think when talking about it in the context of immigration proceedings, we have to recognize by the grace of God that this is a proceeding that is highly connected to discretionary forms of relief. Okay, thank you. Now moving forward, in regards to how we get to the point of attacking the illegal re-entry conviction, it's a collateral attack. And interestingly enough, Mendoza-Lopez, which is a U.S. Supreme Court case, actually identified the means by which to proceed upon it, and then it got further codified thereafter by Congress under 1326D. And in order to be able to demonstrate the ability to proceed upon that, you have to show that you exhausted any administrative remedies that may have been available to seek relief against the order, that the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review, and the entry of the order was fundamentally unfair. And how do you, you talk about the third one of those extensively, but you don't deal with the first two. How do you pass the first two? Interestingly enough, it's an interplay. So the last prong, the fundamental unfairness, do in fact interplay with the third prong. And so if you take a look at exhaustion of the administrative remedies, Section 1326D.1 requires that Mr. Herrera exhaust all of his remedies. But Mr. Herrera was informed that if he disagreed, and this is on the record, if he disagreed with the decision to order returning to Honduras, you have the right to appeal. Those were the quotes referenced by the immigration judge. His failure to exhaust should be excused because he did not make a knowing and intelligent waiver of his right to administrative review. And he didn't seek an appeal. That's correct. And the reason why is because he did not intelligently and knowingly waive his right to appeal. And so what happens here is you have an exchange between Mr. Herrera and the immigration judge. Clearly, the immigration judge is the authority in Mr. Herrera's eyes. And you have a circumstance where Mr. Herrera is looking to the immigration judge and he's clearly indicating he wants to return. And the immigration judge seems to, to a certain extent, you know, entertain that. But he incorrectly discusses that with Mr. Herrera. And then he concludes by saying, well, there's not there's nothing else. There's no other forms of relief for you. And you know, you're going to have we have ordering you to return. And if you disagree with that, you have the right to appeal. So he says, no, that's fine. And that, in effect, waives his right to appeal. But it's not a knowing and intelligent waiver of his right to appeal. So he can just hold those first two prongs in advance and bring them two years late in a habeas case. But he wasn't in custody in a habeas case. So that's. Well, you got you're attacking this conviction collaterally. And you didn't deal in your brief with. I couldn't figure out how you get past the first two prongs to get to the. What you call the actual innocence argument. Well, the way you get to it is advised to be right of appeal and didn't do it. He wasn't he was advised of his right to appeal. But it wasn't an intelligent and knowing waiver of his right to appeal. That means pop it and do it later. And so in essence, what you have here is when he wasn't provided with the with the knowledge of not just how to appeal, but also the fact that there was nothing else for him to do. I couldn't find in your brief how you even dealt with those first two prongs. And then I look for your reply brief to how you responded to the government's brief and you didn't even follow reply brief. Well, your honor, I, I suppose I have to literally apologize for that. And simply speaking, which indicates to me you didn't have an argument to make against. Well, I believe that due to the fund. So what I looked at was the fundamental unfairness. And given the fact that he did not know what was going on because he was misinformed, that goes hand in hand with the in the non-intelligent and not knowing waiver. And so that's the way I saw it in regards to it going hand in hand with that particular requirement. And to move forward to the judicial review. And certainly we discussed Mendoza-Lopez as stated in United States v. Mendoza-Lopez, unknowing, unintelligent waiver of the right to appeal denies non-citizens of judicial review. So if you take a look at the third prong, which is the fundamental unfairness, it really does tie these last two prongs. And perhaps that's the reason why I didn't venture into those last two prongs. But I certainly don't want my error in being non-intelligent enough to come back to haunt Mr. Herrera-Poblada. And that is the reason why I want to make very clear that those two prongs are important, but they go hand in hand with the fundamental unfairness. And in essence, when you take a look at those two prongs and you discuss thereafter the fundamental unfairness, which was what I was going to discuss initially, but I certainly wanted to make sure that I addressed any and all questions. The fundamental fairness here is due to the fact that we have a due process violation. And then second, we have prejudice. And the due process violation is clearly noted in the record, the recording that we submitted as part of the joint appendix. On that particular recording, it is evident that the immigration judge clearly mis-advises Mr. Herrera. And even though he doesn't even specifically venture into the discussion of the words voluntary departure, it seems as if he's aligning himself with the second part, which is the post-conviction voluntary departure. And like I indicated earlier, that's a higher standard. And being that it is a higher standard, it would reasonably follow that he qualified clearly for the lower standard one, which is the pre-conclusion voluntary departure. Counsel, can I ask a question about back to fundamental unfairness? Do we need to find a due process violation or simply is it enough that the petitioner in this case simply wasn't informed of what I think we all agree was a discretionary avenue of relief for the immigration judge? But there's a distinction, right, between finding voluntary departure to be a due process, a substantive due process right, and just simply failing to inform a petitioner of a right, whether it amounts to a due process right or is entirely discretionary. So what's your position? Do we need to find that it's a due process right or is it enough to simply say that because he was not informed of this right, whether it amounts to a due process violation or not, that doesn't matter? I believe they're interchangeable in this context. And so what I see as him being misinformed and also not being informed because he wasn't informed and I noticed that my time is up. Can I have the opportunity to respond to your question? You can finish your answer there and answer any other questions you get. Go ahead. Perfect. Thank you, Your Honor. In this context specifically, you have a circumstance where he wasn't properly advised of the pre-conclusion voluntary departure and he was misadvised of the post-conclusion voluntary departure. And so it is apparent on its face that these two would have very appropriately met as a form of relief for him. Even though the form of relief is discretionary and I want to make sure that we understand, despite the fact that it's discretionary, it still can rise to the due process violation and certainly meet the unfairness prong so long as he was also prejudiced. And the reason why is because it is mandated by law. And when the regulations themselves also bestow upon these immigration judges the duty to inform respondents in immigration court of these forms of relief. And when we are looking at administrative agency, if they've identified certain duties for their individual players within that administrative agency, I believe we have to respect that and recognize that that is, in fact, what makes that proceeding fundamentally fair. And when those duties are materially abridged, in essence, therein lies the fundamental unfairness, the due process violation. And with prejudice, clearly on the record, it's hard to even imagine how he wouldn't have qualified for pre-conclusion voluntary departure at the very least. And so you do meet that third prong. Are there any more questions? Thank you very much. My pleasure. Mr. Duffy, are you out there? Yes, Your Honor. Good to have you with us. Thank you. May it please the court. My name is Dennis Duffy, and I represent the United States in this matter. Your Honors, this case involved an ineffective assistance claim which was properly dismissed by the district court on three independent grounds and should be affirmed by this court. At the outset, it's crucial to keep in mind that the resolution of this case should be based on the application of 2255 case law. This case does not involve a direct appeal from a board of the Immigration Appeals Administrative Determination with several steps removed from that. Likewise, this is not an appeal of a district court's ruling on a 1326D affirmative defense. Instead, Your Honor, this is simply an ineffective assistance claim and must be viewed in that context. And as with any 2255 case, there is always going to be a little bit of attention between the finality of the judgment and the need to provide a criminal defendant with some sort of an avenue for relief when a constitutional error is of the type and dimension that simply is not present here. Because we are in this 2255 context, it's the government's position that the appellant has a much heavier lift as far as what he needs to establish to get relief. And what I mean by that is, unlike the other two procedural costs as I explained, the appeal from a BIA opinion or a direct appeal of a district court's denial or affirmation of an affirmative defense, in this case, he has the burden of going through strictly and proving those elements. And we do not believe he is able to do that. In addition, he has to go through the exceptions and establish that he has an exception to the statute of limitations and also the procedural default. And again, we do not feel that he has the ability to do that based on the facts. Now, Your Honor, with regard to Strickland and the prejudice prong is what Judge Howard held and was one of the three bases for dismissing the 2255 claim. And with regard to prejudice, Mr. Herrera has to show by reasonable probability that but for counsel's unprofessional conduct that would assume that there is unprofessional conduct, which we don't think there was, the result of the proceeding would have been different. In this particular case, he cannot show that. I do not believe in the record he has shown or fulfilled his burden of showing that he would not have pled guilty and would have pursued a 1326D defense and there would have been some likelihood of success. I don't think that's shown in the record. Now, with regard to defense counsel J. Todd's affidavit, I believe Ms. Gurd just referenced that. If you look at that affidavit, it simply indicates that he might have raised a defense. He doesn't cite applicable case law relating to the issue of whether there's a due process violation when you don't give notice of discretionary relief. He cites two cases that simply refer to the ability to challenge removal when it's done by way of reinstating an earlier deportation order. In essence, the government's position would be that Mr. Todd's affidavit doesn't show anything as far as ineffective assistance or prejudice. It simply shows that based on Ninth Circuit law, it might have been worth bringing this in Ninth Circuit. It was not brought here in the Eastern District of North Carolina. And in this case, it would have been a much heavier lift in the sense that unlike the Ninth Circuit, the Fourth Circuit has held that there is no due process right to a discretionary relief. And then the next step and what hasn't been ruled out by the Fourth Circuit is whether you have notification or due process right for notification of a discretionary relief, which we argue is not the case. And most circuits follow that argument. As a result, Your Honor, we think it's a fairly heavy lift for Mr. Herrera to be able to establish on the record that he would have raised this if he knew about it and that he would have won on it. Instead, he pled guilty. He faced a guideline range of 10 to 16 months and he got 11 months. Had he decided to move forward and go to trial, there's a possibility he would have gotten more time. He might have lost his two points of acceptance and that would have upped it to 15 to 20 months. So at the end of the day, Your Honor, we don't think that Mr. Herrera can show that he was prejudiced by this decision not to raise a defense that we think he would have lost. And again, this is his burden. He has to show in the context of the 2255 a reasonable probability that but for counsel's unprofessional conducts that the result would have been different. And again, in the context of a plea, you can't just say I would not have pled guilty. You have to show some basis to the fact that you would have, in fact, pleaded not guilty. And under the Supreme Court's ruling in Hill v. Lockhart, you have to show some likelihood of success. We don't believe he has that success, that he would have been able to show in the 1326D that he would have been successful. So that sort of was still in 2255 land. And the prejudice definition for that is slightly different than the prejudice definition under the third prong of 1326D. But it's our position that he does not meet that prejudice now. It doesn't even come close. And, Your Honor, with regard to even if he gets somehow past that, even to get to that, he still has to show he somehow should be excused from untimely filing of the 2255 and for procedurally defaulting it by not raising it on direct appeal. And again, with regard to each of these, there's an exception if he can show actual innocence. But in order to show actual innocence, he has to show more likely than not that no reasonable jury would have convicted him. Now, in this context, it's a little different because it would have been the affirmative defense that probably would have been resolved by Judge Howard on a motion. But he still has the burden to show more likely than not he would have been able to win under that affirmative defense. So as a result of that, Your Honor, we think 2255 should resolve this case and the court need not go below and get into the definition of whether the right to be given notification of a discretionary right is somehow a due process right. Now, with regard to, Your Honor, if you do go into that area and we do look at the 13-2063 issue, obviously there are three prongs that Mr. Herrera would have to meet, and it's the government's position he does not meet any of those prongs. And we can start with the third prong. Even if you don't get into this, even if you don't get into this split of the circuits regarding whether a person, a non-citizen in a removal hearing can have a right, a due process right to have notice of the potential to get discretionary relief, of which he has no due process right to, even if we skip that for the moment, under that fundamental in fairness, he can't show prejudice. And Judge Diaz, you asked the question, and I think it's a fair question, under 2255, how can you show reasonable probability of a different outcome if it's a discretionary right he's trying to ask for? It's speculative at best as to whether he would have gotten it, and if you look at an unpublished case that Judge Motz, I think, was part of, it's United States v. Shoemade from 1997, it talks exactly about this, and it specifically references the fact that it's speculative at best as to whether he might have gotten the discretionary right. Mr. Duffy, can I ask about that? So in response, your opponent on the other side indicated that the tenor of the hearing before the immigration judge seemed to suggest that he was inclined to grant some kind of departure relief, but for the fact that the petitioner didn't have the money to comply with voluntary departure. Is that enough to sort of get beyond the speculative realm that we're in? No, Your Honor. First of all, the government disagrees that the tenor of this hearing can somehow be interpreted that the judge was likely to grant voluntary departure, whether it was pre-conclusion or post-conclusion. I mean, we had a case involving a non-citizen at a deportation hearing who had been charged with a felony drug case, felony trafficking by possession of cocaine, 200 to 400 grams of powder cocaine. The immigration judge knew enough about it to ask, directly ask, well, what's the deal with this? And Mr. Herrera stated, oh, I showed up and I'm not guilty. Well, that was not true. Now, whether he knew it wasn't true when he said it or he was confused, it's unclear. But what was clear is the immigration judge was concerned enough about the fact that he had a drug conviction out there to say to Mr. Herrera, even if you were found innocent, it might have an impact on your ability to come back. We also have an applicant that would have three DUIs. We also have an applicant that has said, I don't have the money to come back, and that was one of the factors that's looked at when the judge. Remember, in this situation, once it gets to the immigration judge's discretion, it's pretty wide open as to what he can review, as long as it's not abuse of discretion. And I think based on simply the facts within the four corners of that hearing, we've got a drug charge, which the judge probably would have dug into to look. And again, this is speculative because the burden is on Mr. Herrera to show that he would have gotten this discretionary relief. And I think simply from what's in the four corners of that hearing, he can't prove it. Well, it's not a matter of not proving it. I think it was unlikely he would have been granted this relief based on the fact that he had an outstanding drug charge, he had absconded, he had three DUIs. And the only thing that wasn't in the record yet is the fact that he had absconded. But the judge was sure enough to look at it, and we don't know what would have happened. The judge might have continued it to another master hearing date and then dug into that criminal charge to determine. So based on that, Your Honor, we don't think, we don't think he would, he can come anywhere close to proving that he would have been granted this. If anything, the record shows the opposite. Now, with respect to the, with respect to the due process right, Your Honor, that's obviously, it's a well-briefed area, not only this case, but many others. But again, we don't think the court needs to get there because we're in the context of a 2255. Obviously, we have, the Fourth Circuit has not specifically ruled on the notice issue, but they have ruled on whether you have a constitutional right to a discretionary relief. I don't think there's any dispute in this case. How does that circuit split stand? Your Honor, my understanding on the circuit split is, with regard to the notice, is we have five circuits that rule that there is no due process right to notice, and we've noted them in our brief. The third, the fifth, the sixth, the seventh, and the tenth. And then you have two circuits that seem to argue that due process right, you do have a due process right to notice. And why I say seem to is in the Ninth Circuit, there are clearly two cases that say that. The Second Circuit is a little confusion. That's that Copeland case, because in the Second Circuit, they have held, unlike this court, which held under Wilson, that that fundamental famous prong, the first part of it is a constitutional due process right violation. In Copeland, in the Second Circuit, they held it doesn't have to be a due process constitutional violation. So I don't know if Copeland's completely on point with them, but the Ninth Circuit does go their way. And candidly, there are some district court cases within the circuit which also go that way. And there's also district court cases that go our way, which I think is why Judge Howard certified it for appeal. Now, with respect to the first two prongs, the exhaustion and then this third prong, which is improperly being deprived of an opportunity for judicial review, on the exhaustion of administrative remedies, Your Honor, we believe that is shown by the record. He was given the right to appeal and he waited. This judge went to a lot of trouble explaining other rights that were more directly involved. The fact that he could apply again for temporary protective status. Then he got into the fact that he could apply for non-LPR cancellation because he had two children while in the United States. And the judge went as far as to say, I can give you a list of attorneys you might be able to get and we can continue the hearing. And Mr. Herrera made it very clear, no, I don't want to do any of that. I just want to leave, which he was deporting. But the other issue, Your Honor, with regard to exhausting administrative remedies, he came back twice and there were two more removal hearings before this criminal case in our district. And at both of those removal hearings, they used, they literally, it was a reinstatement use of the original order as they're allowed to do under Title VIII. And in either one of those, he could have raised this issue again and there was an opportunity to challenge the original deportation order. Now, there's nothing in the record as to whether he challenged that. The only thing in the record is he was deported based on the reinstatement of the 2010 order. So as a result of that, Your Honor, we think he hasn't met the burden of showing his exhausted remedies. And with regard to the second problem, which is that he was improperly deprived of the opportunity for judicial review, we don't think that was the case here at all. We think he was told you have the right to appeal. This is not a case that's similar to, well, it's not a case that falls into any of the categories in Ross v. Blake, that Supreme Court case that talks about different ways that judicial review can be blocked, essentially. We don't have a situation here where he was basically, there was some administrative scheme of court just to trick him into not applying. And this was, the reason that Ross v. Blake is relevant to Prong I and II, that was the reason in my Rule 28 letter I referred you to last week's Supreme Court argument, because it did deal to some extent with Ross v. Blake. It's not immediately, it's somewhat distinguishable on the facts, but the Supreme Court did seem like it might rule or might give some more guidance on Ross v. Blake, which has some impact on Prong II. As a result of that, Your Honor. If we could decide this case on Prong II, would the constitutional avoidance doctrine kick in on dealing with Prong III? Your Honor, I don't think it would, because on Prong III, I mean, you still have to show prejudice. And if your argument, I mean, you're still, and under the prejudice, the definition for purposes of fundamental offense, it's a little bit different than the strict one. But there's an and in those three Prongs. They have to win on all three of them. That's absolutely right, Your Honor. They have to win all three of them. If he loses on the second one, why would we have to decide a constitutional question? You don't need to, you're correct, Your Honor. You don't need to decide. I mean, that goes back to the old Eichwander case in the 30s or 40s. Right, and again, I think it goes even a step further back, because I think you can avoid even ruling on that by just simply ruling on the 2255, because Judge Howard ruled on prejudice, but I don't think there's a performance issue here as well. Now, candidly, we raised that, and the judge didn't rule on it. But I think if you look at the state of the case law regarding whether he could have won under 1326 D3 and not district, I don't think he would have. So I don't think... Mr. Duffy, can I ask a question about the waiver of judicial review? And I'm not faulting the immigration judge in this case because I do think he was trying to be solicitous of this particular petitioner. But we have cases in our circuit that talk about a waiver, in order for a waiver to be effective, that a petitioner or defendant has to understand the full significance of what it is that he or she is waiving. And how can we say that that's true here when he wasn't fully advised of the full sort of range of voluntary departure remedies that were available to him? Well, Your Honor, if we go down that road, there are so many discretionary types of relief under the immigration laws. And I'm not an immigration attorney. It seems like I've become one in the last month by reading up on this case. You say that with great glee. Well, this will be it for me, I hope. But it's a very complicated area, obviously. I've learned a lot. I've learned that there's pre-conclusion and post-conclusion voluntary departure. I've listened to a lot of arguments. And what I've come to know here is if an immigration judge has to give full notice of all potential discretionary relief in a way that's understandable, then I don't know where it ends. Because instead of a short removal hearing, you're going to start to have many trials, in the sense that the judge is going to have to go through all these potential things. So I think it comes down to the fact that this is not a due process right that he's not being told about. This isn't a situation where the judge didn't tell him he had a right to appeal and left that out. This is notice of something that's completely discretionary. So I guess the response would be the fact that the notice was of something that's completely discretionary, even though it was an error. It should have been told. It's not enough to basically invalidate the entire deportation order for purposes of the criminal statute. That sounds like sort of an argument that it's good enough for government work, which I don't think you're intending to say. I wouldn't go that far. But I think given the way Congress wrote 1326, the decision on the first element to just say there is a deportation order and you would deport, pursuant to a removal of deportation order, and you chose to come back illegally knowing that you were deported. Therefore, the question becomes is when we have a criminal statute that Congress decided to have the first element not be that the government has to prove validity of the order. That's why they had, obviously, they had 1326D to be that narrow exception where they can challenge the order. If we get to the point where they can basically knock out 1326D by claiming, well, you know, he didn't give notice of this, he didn't give notice of that, then it becomes it's almost like we're changing the first element of 1326. So I'm mindful with regard to the immigration cases and the Supreme Court, some of the recent decisions by the Supreme Court. It's obviously a very confusing area, for example, with notices of these hearings, which, you know, but that's not what we have here. This is a little cleaner, and again, we're not only two, I mean we're three steps removed from that hearing. Your Honor, I see my time is up. If you allow me to proceed. You may answer any questions that judges have, certainly. Did that answer the question? That would be opposition, Judge Diaz. I appreciate that. Thank you. I don't have any further questions. Anything further, Judge Floyd? No, sir. Thank you very much, Mr. Duffy. Thanks, Judge Kinkley. Ms. Gerges? And so I wanted to make sure to address this very important point regarding the fact that on the proceedings themselves, it is very clear that he qualifies for voluntary departure. Both the more stringent one, which is the post-conclusion one, and the pre-conclusion one. He had no aggravated felonies, and there are a series of equities that the immigration judge actually goes into. He had been there for 10 years. He had no criminal convictions. He, in essence, also had two United States citizen children. He had been gainfully employed during those 10 years, and he was paying taxes during that time. And so there's very little room to even assume that he somehow did not qualify for voluntary departure. As a matter of fact, voluntary departure is an actual advisal that, at least in every proceeding I've been in, I've heard the immigration judge say. And it seems as if this particular immigration judge was trying to remember it and couldn't quite figure it out. He even asked the government two times, is he missing any other form of relief? As if it was on the tip of his tongue, but he just couldn't recall it. And the reason why the immigration judge actually was discussing coming back is because with an order of removal, you have a 10-year bar. And he had two United States citizen children, which means he could have, in essence, obtained a certain citizenship down the line through them. But in essence, if he had that order of removal, then he would have had the 10-year bar. With voluntary departure, you can actually proceed through consular processing. And that, in part, I would imagine, if he's connecting the dots with respect to the law, is the reason why he was discussing this issue regarding coming back. And so I think it is very noteworthy to identify that he, without doubt, actually qualified for voluntary departure. But for the serious error of what voluntary departure is and the fact that it has three separate forms, the immigration judge would have, in fact, granted it. He was even talking about non-cancellation of removal, which clearly, if you qualify for that, you most certainly qualify for voluntary departure. The uniqueness of this discretionary form of relief, and I don't think that this should be something that is just overlooked, is that you get the return. And in essence, therefore, the alien is no longer present in the United States. So where it becomes important is that it actually will permit the alien to come back if he, in fact, had relative United States citizen children or direct relatives, which in essence is what we have here. And I imagine that's the reason why, part and parcel, why the immigration judge was trying to venture into it but just didn't do it appropriately. And you don't have to – I don't believe we need to reach the issue of whether or not we need to address every single discretionary form of relief. I think when it is apparent on the record that an individual who is in removal proceedings, that is an alien, does qualify, especially if that individual is a pro se individual for a particular form of relief, then yes, there is a duty, a very serious and important duty, to ensure that this particular proceeding is fair to inform the respondent alien of that particular form of relief. And it would appear that that is what the immigration judge attempted but yet failed, sadly, egregiously failed in doing. And as such, that's the reason why we are currently here. It's due to the fact that had the immigration judge, in fact, done it the right way, since Mr. Herrera desired to return, he would have been able to proceed on voluntary departure and in essence gone through consular processing to come back to his children. I see I am out of time. I would just leave with this last remark. I think it is important to ensure, if your honors would permit me, I just have one more thought. Go ahead. Thank you, Judge King. I think it's very important to know that whenever we're reviewing a proceeding, especially an administrative proceeding, we look to what in fact makes that proceeding fair. And in this case, it is already identified by the Board of Immigration Appeals, what specifically, and the regulations, that the duties to apprise certain respondents like Mr. Herrera Pablada of the apparent forms of relief that are available to them is the cornerstone of fairness with respect to this proceeding. Thank you, your honors. And if you have any questions, I would love to answer them. Thank you, Ms. Gergers. We really appreciate it. And I noticed that you were appointed by the court to represent your client, and we appreciate your service. Thank you so very much, Judge King. To your client and to the judicial system. We thank you very much. We couldn't function without lawyers like you. Thank you, sir. If we were in Richmond, we would come leave the bench and greet each of you. And we'll have to defer that to your next visit to the Fourth Circuit, hopefully, when we can do that. Madam Clerk, the business of the panel being complete for the day, we can adjourn until tomorrow morning, I assume. The honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Albert Diaz, Henry F. Floyd